## SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. RAILROAD COMMISSION OF SOUTH CAROLINA et al.

(District Court, E. D. South Carolina at Charleston. May 6, 1922.)

No. 253.

1. **Telegraphs and telephones ☞33(1)—Railroad Commission of South Carolina not authorized to enforce rate law.**

   The Railroad Commission of South Carolina has no power to enforce Act S. C. April 3, 1922, relating to telegraph and telephone rates; such act simply authorizing the commission to furnish information, the Legislature itself having fixed the rates in the act.

2. **Courts ☞101—Bill to restrain Railroad Commission of South Carolina from publishing rates not a bill to restrain enforcement of statute, requiring three federal judges on application for injunction.**

   A bill to restrain the Railroad Commission of South Carolina from publishing the established rates under Act S. C. April 3, 1922, is not a bill to restrain the enforcement of a statute by an officer, under Judicial Code, § 266 (Comp. St. § 1243), requiring that a motion for a temporary injunction be heard before a court of three judges; the commission having no power to enforce the statute, notwithstanding Civ. Code S. C. 1912, § 3161, giving the commission powers of enforcement over telegraph and telephone lines.

3. **Courts ☞101—Statute relating to number of federal judges on motion for temporary injunction held inapplicable on motion to dismiss complaint.**

   Judicial Code, § 266 (Comp. St. § 1243), requiring that motion for temporary injunction to restrain the enforcement of a statute by an officer be heard by three judges is inapplicable on motion to dismiss the complaint, which, under rule 29 (33 Sup. Ct. xxvi), is equivalent to a demurrer to the whole bill, since, if the motion be refused, and no answer be interposed, the decree would be final, and a final injunction would issue.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**1. Equity ⬅︎239—Matters of fact in bill of complaint taken as admitted on demurrer.**

On bill and demurrer, or bill and motion to dismiss, all matters of fact in the bill of complaint well pleaded must be taken as admitted.

**5. Telegraphs and telephones ⬅︎7½—Allegation as to status of foreign corporation in state held insufficient to show right to do business therein.**

Allegations in complaint that complainant is duly and legally qualified to do a telephone business throughout the state of South Carolina, and is a foreign corporation doing business in such state, and a nonresident, are insufficient to show that such corporation is entitled to do business in the state in view of Civ. Code 1912, S. C., §§ 2664–2667, requiring foreign corporations to perform certain stipulated acts, especially in view of section 2688.

**6. Corporations ⬅︎391—Public service corporation entitled to a fair and reasonable remuneration, and state may not compel it to render services free and exhaust capital for public.**

In the absence of a contract compelling a corporation, though a public service corporation, to perform its services at stipulated and covenanted rates, it is entitled to charge such rates as will lead to a fair and reasonable remuneration, and a state has no right to compel it to render its services free and to exhaust its capital in performing work for the benefit of the public.

**7. Corporations ⬅︎382½, New, vol. 16 Key-No. Series—Public service corporation has right to cease operating.**

A public service corporation has the right, if it finds its business unremunerative, unless bound to the contrary by a contract, to cease operating and stop its work.

**8. Corporations ⬅︎636—State may prescribe terms on which foreign corporation will be allowed to do business and to arbitrarily exclude corporation not engaged in interstate commerce.**

A state has the right to prescribe the terms on which a foreign corporation will be allowed to carry on business within its jurisdiction, or, if it see fit, arbitrarily and capriciously exclude any corporation from entry within its border, if not engaged in interstate commerce.

**9. Corporations ⬅︎636—State and foreign service corporation must be given reasonable time to exclude from state or cease doing business.**

If a state should exercise the power of exclusion of a public service corporation doing a business within it, under the guise of regulation, it can do so by giving it a reasonable time to realize on its property and securities and retire from the state, and, conversely, a public service corporation, exercising its right to cease carrying on its business because of inability to earn a reasonable return, may be restrained from doing so for such a reasonable time as would permit the state to meet the situation and endeavor to provide for the public service.

**10. Corporations ⬅︎636—Statute prescribing confiscatory rates for foreign public service corporation invalid, unless time given to cease business.**

A state statute fixing rates to be charged by foreign public service corporation doing business in the state, which are nonremunerative and confiscatory, though not invalid on its face, is unconstitutional unless the foreign corporation is given time and opportunity to cease business and realize on its investment.

In Equity. Suit by the Southern Bell Telephone & Telegraph Company, a corporation created and existing under the laws of the state of New York, against the Railroad Commission of South Carolina and others. On motions for temporary injunction and to dismiss a complaint. Motion for temporary injunction granted, and that for dismissal of bill dismissed.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Grier & Park, of Greenwood, S. C., W. S. Nelson, of Columbia, S. C., Hagood, Rivers & Young, of Charleston, S. C., and Henry E. Davis and Willcox & Willcox, all of Florence, S. C., for plaintiff.

Samuel M. Wolfe, Atty. Gen., John M. Daniel, Asst. Atty. Gen., Stephen Nettles, of Greenville, S. C., F. A. Miller, of Hartsville, S. C., and D. W. Robinson, of Columbia, S. C., for defendants.

SMITH, District Judge. This cause came on to be heard on the 24th day of April, 1922. It came on to be heard first on the motion made in the cause for a temporary injunction, following an ex parte temporary restraining order already granted. At the same time and place there was heard a motion filed by the defendants to dismiss the complaint for want of equity, and in that the bill of complaint upon its face shows no ground for relief in favor of the complainant against the defendants. Due service has been made upon all parties defendant, and all have appeared by counsel, and counsel have been heard for all parties interested, both upon the motion for an interlocutory injunction and on the motion to dismiss the bill of complaint.

The first matter for consideration is the motion made on behalf of the complainant that the motion for a temporary injunction is one which, under section 266 of the Judicial Code of the United States (Comp. St. § 1243), must be heard before a court of three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the motion is made to defer the hearing on this motion until the judge of this court shall have time to call to his assistance two other judges and name a date for the hearing.

Section 266 prescribes that any interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of the state, by restraining the action of any officer of such state in the enforcement or execution of that statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of the state, shall not be issued or granted, except after a hearing before three judges provided for in the statute. The bill of complaint in this case is brought to enjoin the Railroad Commission of this state from the enforcement of the act of the state of South Carolina approved April 3, 1922, entitled:

"An act to regulate the maximum price which may be charged by telephone and telegraph companies doing business in this state."

That act provides in express terms that, from and after the approval of the act by the Governor, no corporation, company, firm, person, or persons owning, operating, or controlling a line or lines of telephone or telegraph in this state shall charge or collect or suffer to be charged or collected for their services a greater price or sum of money or a greater rate than was of legal force and effect on January 1, 1921. The act further provides that any person so forbidden to charge higher rates, violating the provisions of the section, shall be liable to a penalty of $50 for each violation or attempted violation, to be recovered in any court of competent jurisdiction in this state, at the instance and on behalf of the aggrieved party or parties.

There has been no order made by any administrative board or commission, acting under and pursuant to this statute or any other statute of the state, and therefore the bill is not brought to enjoin the enforcement or execution of any such. It must stand upon that part of section 266 which requires any application for an interlocutory injunction suspending, or restraining the enforcement, operation, or execution of any statute of the state by restraining the action of any officer of the state in the enforcement or execution of such statute.

[1] An examination of this act approved April 3, 1922, does not show that any officer of the state is authorized to enforce or execute the statute. The enforcement of the statute, so far as this particular statute is concerned, is secured by making the offending party liable to a penalty of $50 for each violation or attempted violation, to be recovered in any court of competent jurisdiction in this state at the instance and on behalf of the aggrieved party or parties. So far as this statute is concerned, the Railroad Commission is not authorized in any wise to enforce it. The enforcement is left to the method provided by a liability to the party or parties aggrieved. The only thing that by this statute the Railroad Commission is required to do is to promulgate, and on request furnish, the schedule of rates existing and effective January 1, 1921. It is evident that this is not meant for an enforcement of the act, but simply for the purpose of giving information to the public as to what were the rates directed by the Legislature. The Legislature, by the statute itself, at once prescribes the schedule of rates. In order that the public making use of the telephone and telegraph service shall be informed as to what are the legal rates, the Railroad Commission, is for the purposes of giving that information, required to have promulgated and on request furnish the information. The commission is not to enforce the act. It is to do nothing but give information of the schedule already existing, and which any member of the public could obtain by application to the office in which that schedule is on file. That is all.

[2] This statute itself does not authorize or empower any officer of the state in any wise to enforce it, and therefore no bill of complaint could lie to restrain the action of any officer of the state from enforcing that which he is not authorized to enforce. A bill to restrain the Railroad Commission from publishing the established rates is not a bill to restrain the enforcement of a statute by an officer under the terms of section 266. A bill might lie to restrain parties aggrieved from enforcing it, so as to put an end to a multiplicity of actions; but that bill would be against those parties, and not against the officers of the state, and would be an application to the court in its general equity jurisdiction for an injunction to put an end to a multiplicity of actions, and would not come under the terms of section 266 of the Judicial Code of the United States.

Counsel for the defense attempt to meet this upon the ground that the Railroad Commission has, by section 3161 of the Code of Laws of South Carolina of 1912, the same powers of enforcement over telephone and telegraph lines that it has over railroads; but that is not the provision of this special statute, which provides its own peculiar

remedies for its enforcement, and furthermore, under section 3163 of the Code of Laws of 1912, the Railroad Commission is not given any authority to enforce the provisions of the statute, but it is provided that in the case of the violation of the provisions of law by telephone lines, or the failure or refusal to obey any orders of the commission, such parties shall forfeit and pay as a penalty therefor the sum of $25 per day for each day in default, to be recovered by suit in the name of the state on the relation of any person, firm, or corporation aggrieved, in any county in which such violation or default shall be committed or occur, and the sum so recovered shall, after paying all expenses of such suit, be paid into the treasury of the state, and that it shall be the duty of the Attorney General and of the solicitors of the state, not of the Railroad Commission, to prosecute such suits.

An inspection of the Act of April 3, 1922, shows that the rate or schedule of charges is there fixed directly by the state itself. No action of the Railroad Commission is required, and this bill is brought, not really to restrain any action of the Railroad Commission, but to restrain the enforcement of the tariff or schedule of rates prescribed by the state itself, and for that purpose to restrain a multiplicity of parties from suing for the violations and recovering the penalties prescribed by the statute. It does not appear, therefore, to the court, that the application is for an interlocutory injunction, which under the terms of section 266 of the Judicial Code of the United States requires it to be heard by a court of three.

The court is not unmindful of the directions of the decision of the Supreme Court of the United States in the case of Ex parte Metropolitan Water Co. of West Virginia, 220 U. S. 539, 31 Sup. Ct. 600, 55 L. Ed. 575; but in that case there was no doubt that the action was to restrain the enforcement of a statute of the state, by restraining the action of an officer of the state, and the only point on appeal was that the court below held the act to be constitutional, and not unconstitutional, and refused the temporary injunction, and, so holding, considered that that dispensed with the necessity of calling two judges to the assistance of the presiding judge, which occasion only arose when the court should issue a temporary injunction on the ground that this statute was unconstitutional. It is therefore held that section 266 of the Judicial Code is not applicable to the present application.

[3] For the purpose of this hearing however, the result does not depend upon the application for a temporary injunction. The defense has interposed a motion to dismiss, and such motion, under rule 29 (33 Sup. Ct. xxvi), is equivalent to a demurrer to the whole bill, and the hearing is upon the merits upon the bill and motion to dismiss. If the motion be refused, and no answer be interposed, the decree would be final, and a final injunction would issue. The provisions of section 266 apply only to temporary, and not to final, injunctions. Inasmuch as, if the court is of the opinion that the bill should be dismissed, and so order, that would be a permanent and final decree disposing of the matter, and there would be nothing left before the court upon which any application for a temporary injunction could be heard.

[4] For the purposes of the argument upon bill and demurrer, or

bill and motion to dismiss, all matters of fact in the bill of complaint well pleaded must be taken as admitted.

[5] It is set out in the complaint that the complainant is duly and legally qualified to do a telephone business throughout the state of South Carolina. It is also set out in the bill of complaint that the complainant is a foreign corporation doing business in the state of South Carolina and a nonresident of the state of South Carolina. This allegation is insufficient. The state of South Carolina requires that, in order to permit foreign corporations to do business within its limits, they should perform certain stipulated acts, as prescribed in sections 2664, 2665, 2666, and 2667 of the Code of Laws of 1922. Proper pleading would require that it should be alleged that all those preliminary and additional acts had been performed, and not make simply the general allegation that the complainant is legally qualified to do a telephone business, especially in view of the positive provisions of section 2688 of the Code of Laws of 1922, which declares that it shall be unlawful for any foreign corporation to do business or attempt to do business in the state without having first complied with the requirements of the law. Inasmuch, however, as no exception is taken to this, although the facts are not well pleaded, it may be assumed for the purposes of the argument that compliance has been had by the complainant with all these requirements, and that it is authorized as a foreign corporation to do business in the state of South Carolina.

That being the case, the bill alleges that, so carrying on business in the state of South Carolina as a telephone company, charging and receiving the rates of toll theretofore permitted by the legal authorities of the state of South Carolina, suddenly on April 3, 1922, the state of South Carolina by legislative act decreased these rates to a point at which they were nonremunerative and confiscatory. The express charge in the bill of complaint is: The rates and charges which are imposed on it, the complainant, by the act, are so low, unreasonable, and inadequate that they do not and cannot be made to yield to the complainant a fair and reasonable return upon the value of its property, and are in effect confiscatory.

[6, 7] In the absence of a contract compelling a corporation, although a public service corporation, to perform its services at stipulated and covenanted rates, it is entitled to charge such rates as will lead to a fair and reasonable remuneration. The state, acting for the public, has no right to compel a corporation to render its services free, nor to exhaust its capital in performing work for the benefit of the public. A corporation has the right, if it finds it unremunerative, unless bound to the contrary by a contract, to cease operating and stop its work.

[8] There are two conflicting principles under the decisions involved: One is the right of the corporation, either to receive reasonable remuneration for the use of its capital and its labor, or to cease operation; and, on the other hand, the right of the state to regulate the rates which a corporation can charge. In doing this, it is bound to allow it to charge such rates as will lead to a reasonable remuneration. Again, there is no doubt of the right of the state to prescribe the terms upon which a foreign corporation will be allowed to carry on business with-

in its jurisdiction, or even, if it see fit, arbitrarily and capriciously to exclude any corporation (if one not engaged in interstate commerce) from entry within its borders.

The position of the complainant is, and is so avowed in argument, that where a foreign corporation once comes into a state with its permission, and makes investments, it acquires a perpetual right to remain there and carry on business at remunerative rates, no matter what may be the casualties that affect other business, and the contention is that a corporation, having once established itself, being of right entitled to a reasonable remuneration, is entitled in perpetuity as a vested and continuing right to continue to carry on business, and to require payment therefor of such rates as would give it a reasonable remuneration, although the times be such that every other industry in the state is unable to earn such remuneration.

Carried to its logical and full extent, this would mean that the state, having allowed foreign corporations to come within the jurisdiction and make investments for the purpose of carrying on their business, would find itself completely tied hand and foot in perpetuity to allow them to remain and operate and carry on business at a reasonable rate, no matter what may be the wishes of the state or of its citizens in regard thereto. What an opportunity for investors it would be if they could thus acquire the right by a forced levy in the shape of rates to insure themselves in perpetuity a profitable return on their investments!

It would be equally hard, however, if after a corporation has entered into a state with its permission, and made its investments and carried on business, that the state should have any arbitrary and immediate right of exclusion, which would lead to the destruction and loss of those investments already made. By an arbitrary enactment decreasing the rates of compensation to a point which in the result would be destructive of the property of the corporation, the state could in effect declare there must be a departure from its limits, and an exclusion from doing business therein of any corporation, although it reached that result under the guise of a regulation of its schedule of charges.

[9] The question comes into this argument only incidentally, in view of the points of law raised by the motion to dismiss as based upon the power of the state. While it may be conceded that no such right in perpetuity exists on the part of any foreign corporation to carry on business and remain within the state, yet equally it must be denied that the state has the right by a sudden and arbitrary exclusion practically to sacrifice and confiscate the property of any such corporation. If it should exercise that power of exclusion, under the guise of regulation, it can do so by giving to the corporation, which has been allowed to establish itself legally within the limits of the state, such a reasonable time for realization upon its property and securities and retirement from the state as would as a judicial question equitably meet the situation. So, conversely, a public service corporation, exercising its right to cease carrying on its business because of its inability to earn a reasonable return from its operation, might be restrained from doing so for such a reasonable time as would permit the state to meet the situation and endeavor to provide for the service of the public.

The ground, under this head, on which the statute is claimed by the defendant to be invalid and unconstitutional, is not that the act, on its face is unconstitutional, but is so in the results effected.   Upon its face, the act is a constitutional exercise of the state's right to regulate the rates charged by a public service corporation.   But it is claimed that as a matter of fact, dehors the wording of the act, the rates prescribed are unremunerative and unconstitutional, and the act is invalid, not because an act prescribing rates is unconstitutional, but because the particular rates prescribed are beyond the power of the state to prescribe.   The whole controversy turns upon a question of fact, to be decided by the court upon the testimony to be adduced.   It is not the statute which per se is unconstitutional, but that the rates prescribed are unconstitutional.

[10] It being conceded by the defendant on the motion to dismiss that as a matter of fact the rates so enacted by the state are nonremunerative and confiscatory, it follows that the state at this time, under its power to exclude, cannot summarily confiscate, and the action of the state in at once prescribing and attempting to enforce such nonremunerative and confiscatory rates is unconstitutional and invalid.

The next question is, however, whether the state has so acted, without giving the party an opportunity for relief, by following the terms of the act.   The act, while declaring at once what shall be the rates at a certain date, and what shall be the penalties for violation, contains other provisions.   The act is a little ambiguous, because by the third proviso it is provided:

"Decisions of said commission may be reviewed by the court of common pleas upon questions both of law and fact."

Whereas, no commission has been, previous to that proviso, referred to in the act, and that clause is evidently out of place, and should follow the succeeding clause, which provides for the commission's action. The act further provides that the Railroad Commission may, on application, after investigation in the manner now provided by law, alter, modify, raise, or reduce rates in effect January 1, 1921, and that upon its action, and within 30 days thereafter, any person aggrieved may commence an action in any court of competent jurisdiction to vacate the action of the commission, and that no order or determination of the commission reducing any rate, fare, charge, or toll shall be enforced during the pendency of such action, if the telephone company affected shall execute and file a sufficient bond to secure the amounts collected in excess; that any party to such action shall have the right to appeal to the Supreme Court.

This proceeding does give to every party affected the opportunity to be heard, to raise all questions and appeal, if the decision be against him; but the difficulty is that this applies under the terms of this act only to future actions of the Railroad Commission.   If the statute had not enacted at once a prescribed and fixed rate of charges, taking effect immediately, these provisions would be ample to secure to the parties aggrieved, whether they be telephone companies or customers, all rights to which they would be constitutionally entitled.   The difficulty is that the statute at once prescribes a schedule or tariff of charges,

which takes effect and remains in effect until the Railroad Commission can receive applications and act, so as to raise or reduce them, and for that period unreasonable and confiscatory rates would be in force.

To allow the complainant to be sued in repeated actions to recover the penalties provided by the statute in favor of parties aggrieved would not only lead to a great and wholly unnecessary multiplicity of actions, but would place the complainant under a most inequitable burden in the ascertainment of its legal rights. The complainant has the right to have its day in court and its rights adjudicated, free from the risk of having to pay great penalties as accrued whilst it is bona fide attempting to settle the questions, and pending a final determination to that effect.

The court having come to the conclusion that under these circumstances there is an equity in the bill which entitled the complainant to file it, the other grounds raised against the invalidity of the act need not be considered.

It is therefore ordered, adjudged, and decreed that the motion to dismiss the bill be overruled, and that it appears upon the face of the bill of complaint that the rates imposed by the act of the state of South Carolina approved April 3, 1922, are unreasonable and confiscatory, and should not be enforced, and that the complainant is entitled upon the face of the bill to a permanent injunction against the parties to this bill, enjoining and restraining the institution of any actions to recover any penalties prescribed in the statute.

It is further ordered, adjudged, and decreed that the defendants may, within 30 days from the date of this decree, answer to the bill of complaint herein, as they may be advised, and that upon the bill of complaint and such answers, if filed, the cause shall stand for hearing upon the same, with any testimony that shall be taken upon any issues of fact raised by any such answer, and, if no answer be filed, the complainant may move for a decree pro confesso under equity rule 29 (33 Sup. Ct. xxvi).

It is further ordered, adjudged, and decreed that, if answers be filed in the time allowed, the injunction as herein decreed shall continue until the further order of the court; and, inasmuch as an appeal may lie from this decree, it is further ordered, adjudged, and decreed that, in case such appeal be taken within 30 days from the entry of this decree, then and in that case the complainant or any party hereto may move before this court for an order continuing such injunction during the pendency of such appeal and until the further order of this court.